UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO ALVARADO, | Case No. CV 13-6170-SP |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | |
| Defendant. | |

**I.**

**INTRODUCTION**

On September 3, 2013, plaintiff Armando Alvarado filed a complaint against the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of supplemental security income ("SSI"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one issue for decision, whether the Administrative Law

1

Judge ("ALJ") properly discounted his credibility. Memorandum in Support of Complaint ("P. Mem.") at 3-13; Memorandum in Support of Defendant's Answer ("D. Mem.") at 1-10.

Having carefully studied the parties' moving papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ provided clear and convincing reasons supported by substantial evidence for discounting plaintiff's credibility. Consequently, this court affirms the decision of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was forty-four years old on August 1, 2006, his alleged onset of disability date, has an eleventh grade education. AR at 51, 164. Plaintiff has past relevant work as a roofer/helper. *Id.* at 76.

On April 19, 2010, plaintiff protectively filed an application for SSI due to high blood pressure and numbness in the left foot. *Id.* at 159, 164. The Commissioner denied plaintiff's application initially and upon reconsideration, after which he filed a request for a hearing. *Id.* at 84-87, 92-96, 101-02.

On October 5, 2011, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id.* at 48-78. A vocational expert also testified. *Id.* at 74-77. On November 8, 2011, the ALJ denied plaintiff's claim for benefits. *Id.* at 35-43.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since April 19, 2010, the application date. *Id.* at 37.

At step two, the ALJ found that plaintiff suffered from the following severe combination of impairments: diabetes mellitus; an asymptomatic left hydrocele/varicocele; an adjustment disorder; and history of cocaine use until

three years ago and alcohol use until two years ago, both in alleged sustained remission. *Id.*

At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 39.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined that he had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) except with occasional postural activities.[2] *Id.*

The ALJ found, at step four, that plaintiff was incapable of performing his past relevant work as a roofer. *Id.* at 41.

At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including laundry folder, ticket clerk, and nuts and bolts assembler. *Id.* at 42. Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 43.

Plaintiff filed a timely request for review of the decision, which the Appeals Council denied. *Id.* at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

---

[1]   Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

[2]   "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b).

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

# IV.

# DISCUSSION

### The ALJ Properly Considered Plaintiff's Credibility

Plaintiff argues that the ALJ failed to conduct a proper credibility analysis and only provided boilerplate reasons for finding him less credible. P. Mem. at 3-13. Plaintiff also argues, however, that it appears the ALJ rejected his testimony on bases including that it was not supported by objective medical evidence and he made inconsistent statements, but that none of the reasons was clear and convincing. *Id.* at 6-10.

An ALJ must make specific credibility findings, supported by the record. Social Security Ruling 96-7p.[3] To determine whether testimony concerning symptoms is credible, an ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, an ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). An ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation

---

[3] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ here found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 40. At the second step, because the ALJ did not find any evidence of malingering, the ALJ must provide clear and convincing reasons for finding plaintiff less credible. Here, the ALJ discounted plaintiff's credibility because: (1) plaintiff made inconsistent statements concerning his alcohol and drug use; (2) plaintiff received conservative treatment; and (3) his alleged symptoms were inconsistent with the objective medical evidence. *Id.*

First, the ALJ noted that plaintiff made inconsistent statements concerning when he stopped using alcohol and drugs. AR at 40; *see Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (plaintiff's conflicting statements about her drug and alcohol usage were a clear and convincing reason for discounting plaintiff's credibility). At his October 2011 hearing, plaintiff implied that he stopped using drugs about three years prior, and testified that he stopped drinking about nine months prior around January 2011. *See* AR at 54, 67.

Plaintiff's testimony as to when he quit drinking was not in fact inconsistent with other statements in the record about his alcohol usage. In December 2010, plaintiff told the consultative psychiatrist that he was drinking a six-pack of beer every three days. *See id.* at 257. And in May 2011, plaintiff told Los Angeles County – USC Medical Center staff that he had been a recovering alcoholic for three months. *Id.* at 316. Both statements are consistent with his testimony. The alleged inconsistency may have arisen from plaintiff's testimony that he was drinking two years ago when he was arrested for a DUI. *Id.* at 53. The ALJ apparently interpreted plaintiff's testimony as being that he stopped his alcohol

6

usage then, but plaintiff never testified that he stopped at that time. Instead, plaintiff answered "yes" to the ALJ's question of whether plaintiff was drinking two years prior.[4]

Plaintiff's drug usage testimony was more inconsistent. In September 2009 plaintiff reportedly told his physician that he quit using cocaine two weeks prior. *See id.* at 248. But at the October 2011 hearing, when asked if he had been doing drugs, plaintiff responded, "Yes. About three years ago." *Id.* at 54. Although plaintiff did not expressly testify that he stopped using drugs three years prior, he implied as much. As such, while the purported inconsistent statements about when plaintiff stopped drinking alcohol were not a clear and convincing reason for finding him less credible, the ALJ had some basis to find plaintiff's drug use testimony inconsistent.

Second, the ALJ found that plaintiff received only conservative treatment for his hydrocele and diabetes. *See id.* at 40; *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (conservative treatment is a basis for discounting a plaintiff's credibility). With regard to the hydrocele, plaintiff testified that he was going to have surgery. AR at 59. But none of the medical records document a recommendation for surgery. To the contrary, his physicians prescribed pain medication to treat the hydrocele, noting that plaintiff's hydrocele was very small and it was "likely that conservative measures [would] be successful."[5] *See, e.g.*, *id.* at 332-34.

As for his diabetes, plaintiff told Dr. Homayoun Saeid, a consultative

---

[4] Thus, the ALJ erred at step two when he found that plaintiff stopped drinking alcohol two years prior as opposed to nine months prior, but the error was harmless.

[5] The physicians also noted that plaintiff was not adhering to the treatment plan and that the pain was limited. AR at 332.

7

examiner, that he had been diagnosed with diabetes before his incarceration, received diabetes medication in prison, and had been controlling his diabetes with his diet since his release. *Id.* at 223.  At the hearing, plaintiff testified that he was not taking medication for diabetes, and as far as he knew he was not diabetic. *Id*. at 59.  Plaintiff's treatment notes reflect that plaintiff was not treated with medication, and indeed do not even reference diabetes. *See, e.g., id.* at 245-48, 287.  Thus, not only is there substantial evidence to support the ALJ's finding that plaintiff only received conservative treatment, but there is also substantial evidence to support a finding that plaintiff made inconsistent statements about his impairments and treatment plans.

Finally, although not expressly stated, the ALJ noted that plaintiff's alleged symptoms were not supported by the objective medical evidence. *See id.* at 40; *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (lack of corroborative objective medicine may be one factor in evaluating credibility).  Specifically, the ALJ found that the infrequency of treatment and minimal findings did not support the limitations plaintiffs alleged. *See* AR at 40.  During the five years between the alleged onset date and the hearing, plaintiff only sought primary care treatment seven times, of which only twice was for leg pain. *See id.* at 244-48, 282-83.  The treatment notes include neuropathy or alcoholism neuropathy as a diagnostic impression, but contain no objective findings to support the diagnostic impression. *See id.*  Indeed, most of the treatment notes are bereft of any objective or subjective findings. *See id.* at 244-46, 283.  An August 2010 radiology report showed no abnormality in the left calcaneus. *Id.* at 229.  Further, the consultative examiner found only some tenderness on the plantar aspect of the left heel with associated mildly antalgic gait and some tenderness in the lumbosacral spine but with normal range of motion and straight leg raising test. *See id.* at 227.  As for the hydrocele, it was very small and the pain was mostly limited to straining and

his work as a roofer. *See id.* at 332. As such, there is substantial evidence of a lack of objective medical support for plaintiff's alleged limitations relating to his neuropathy.

In sum, the ALJ provided at least two clear and convincing reasons supported by substantial evidence for finding plaintiff less than credible. As such, the ALJ did not err in discounting plaintiff's testimony concerning his symptoms.

## V.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

DATED: December 29, 2014

SHERI PYM
United States Magistrate Judge